UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HAKIM RAHEL, A45-546-257,

           Petitioner,

        -v-                                              12-CV-1241-JTC

TODD TRYON, Assistant Field Office
Director,

           Respondents.

---

## INTRODUCTION

Petitioner Hakim Rahel, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered January 3, 2013 (Item 3), respondent has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6), in opposition to the petition. For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Bangladesh, was admitted to the United States on or about October 12, 1996, as a lawful permanent resident. *See* Item 5-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan), pp. 3, 15.

According to DHS records, on February 11, 2010, petitioner was convicted in New York State Supreme Court, New York County, of Burglary in the 3rd Degree, in violation of N.Y. Penal Law § 40.20. He was sentenced to 30 days incarceration and 5 years probation. On December 7, 2010, petitioner was re-sentenced to a 1 year term of imprisonment for violating the terms of his probation. *Id.* at 7, 15. On or about November 16, 2010, petitioner was convicted in New York State Supreme Court, New York County, of Attempted Burglary in the 3rd Degree, in violation of N.Y. Penal Law §§ 110,140.20. He was sentenced to a term of imprisonment of 18 months to 3 years. *Id.*

On December 29, 2010, Petitioner was encountered by DHS Criminal Alien Program Officers at the Ulster Correctional Facility, maintained by the New York State Department of Correctional Services ("DOCS," reorganized in 2011 and renamed the Department of Corrections and Community Supervision ("DOCCS")). *Id.* at 16. Upon verification of his immigration status, petitioner was served a Notice to Appear, dated April 15, 2011, which charged him with being subject to removal from the United States for violations of the Immigration and Nationality Act ("INA")–specifically, sections 237(a)(2)(A)(ii) (8 U.S.C. § 1227(a)(2)(A)(ii)) (conviction of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct), and 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii) (conviction of an aggravated felony, defined in the INA as a law relating to a theft offense or burglary offense for which the term of imprisonment at least 1 year was imposed). *Id.* at 13-15.

On September 26, 2011, upon his release from the custody of DOCCS, petitioner was received into DHS custody. *Id.* at 7. On January 13, 2012, Immigration Judge Steven

J. Connelly ordered petitioner removed from the United States to Bangladesh. *Id.* at 12. The removal order became final on May 25, 2012, when the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal from the Immigration Judge's decision. *Id.* at 8, 11.

On May 31, 2012, DHS sent a presentation packet to the Consulate General of Bangladesh (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal, *id.* at 39, and on that same day served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 10. The warning form advised petitioner, among other things, of penalties under INA § 243, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), a failure to comply or to provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. *Id.*

In August 2012, DHS conducted a review of petitioner's custody status, in accordance with immigration regulations. *Id.* at 7-9. On August 21, 2012, DHS issued a Decision to Continue Detention advising petitioner that, based upon the totality of information available in his file, including his criminal history and active orders of protection, DHS determined that petitioner would be a threat to the community if he were to be released from custody. *Id.* at 8.

According to DHS records, between August 2012 and January 2013, DHS representatives had regular contact with the Consulate regarding the status of the request

for a travel document for petitioner. Item 5-1, ¶ 15. On October 12, 2012, petitioner was personally interviewed by First Secretary Shahedul Islam at the Bangladeshi Consulate in New York City. Following the interview, Mr. Islam stated that Petitioner's case was pending verification with the Ministry of Foreign Affairs and that Mr. Islam would try to have a travel document issued within two months. *Id.* at ¶ 16. On November 15, 2012, DHS faxed Mr. Islam a letter from petitioner requesting that a travel document be issued for his return to Bangladesh. Item 5-2, pp. 18-19.

Also in November 2012, DHS Headquarters Custody Management Unit ("HQCMU") conducted of further review of petitioner's custody status, including an in-person interview of petitioner on November 8, 2012, at the Buffalo Federal Detention Facility in Batavia, New York, where he currently resides. *Id.* at 5-6. Following completion of the file review and interview, petitioner was notified on December 4, 2012, that DHS determined to continue his detention in DHS custody. *Id.* at 3-4.

On January 23, 2013, the Consulate issued a travel document for petitioner, valid for his return to Bangladesh until July 22, 2013. *Id.* at 2. Upon receipt of the travel document, DHS made arrangements for petitioner to be removed from the United States to Bangladesh on February 13, 2013. Item 5-1. ¶ 20.

On February 1, 2013, petitioner filed in the United States Court of Appeals for the Second Circuit a petition for review of the BIA's order of May 25, 2012, along with a motion for stay of removal. Item 5-2, p. 44. The petition for review and motion for stay of removal remain pending before the Second Circuit. *Id.*; *see Hakim v. Holder*, No. 13-0382 (2d Cir.) (Docket sheet, https://ecf.ca2.uscourts.gov).

Meanwhile, petitioner filed this action on December 14, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued post-final-removal order detention in DHS custody is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States

within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[1]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of

---

[1] INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal

and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on September 26, 2011, upon his release from DOCCS' custody, for detention pending

completion of immigration removal proceedings as authorized by INA § 236.[2]  *See* Item 5-1, ¶ 8.  This detention continued until May 25, 2012, when the BIA dismissed petitioner's appeal from the Immigration Judge's order of removal.  *See* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly undertook efforts to secure a travel document for petitioner's removal to Bangladesh, including regular contact with Consulate officials and submission of visas, birth certificates, affidavits and other supporting documentation.  *See* Item 5-2, pp. 20-33. A travel document was issued in January 2013, and arrangements were made for petitioner to be removed from the United States to Bangladesh on February 13, 2013.  *See* Item 5-1, ¶ 20.  Then, on February 1, 2013, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal.  *Id.* at ¶ 21.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion

---

[2]The present petition does not challenge detention under INA § 236 during the period prior to the final order of removal.  *See* , e.g., *Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec*., 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a

motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Bangladesh in the reasonably foreseeable future. He simply alleges that the Consulate "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued …." Item 1, ¶ 11. However, as discussed above, the Consulate has, in fact, issued a travel document for petitioner which is valid through July 22, 2013, and travel arrangements for his removal were made by DHS but were cancelled when the petition for review and request for stay of removal were filed with the Second Circuit. Item 5-1, ¶¶ 20-21.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated substantial numbers of aliens to Bangladesh, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal

year ("FY") 2009, a total of 104 aliens were repatriated to Bangladesh; in FY 2010, 96 aliens were repatriated to Bangladesh; and in FY 2011, 84 aliens were repatriated to Bangladesh. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Bangladeshi government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Bangladesh.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 20, 22. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued);

*Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); see also *Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on any delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May 1, 2013
p:\pending\2012\12-1241.2241.apr26.2013